IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SZIVA, | ) | CASE NO. 5:08CV0907 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE 0'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| JULIUS WILSON Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Michael Sziva's ("Sziva") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on April 4, 2008. Sziva is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Sziva*, Case No. CR 05 11 4293(B) (Summit County 2005). For the reasons set forth below, the magistrate judge recommends that the petition be dismissed.

I. Procedural History

The November 2005 term of the Summit County Grand Jury indicted Sziva on one count each of aggravated possession of drugs with a major drug offender specification, complicity to commit aggravated trafficking in drugs, and conspiracy to commit aggravated trafficking in drugs. The state appellate court reviewing Sziva's conviction found the following facts to be relevant to his case:

{¶ 2} On November 22, 2005, a Summit County Sheriff's narcotics detective watching packages being offloaded from trucks at a Federal Express terminal in Akron spotted an envelope that he considered suspicious.  Although the return address on the envelope was for a business, shipping for the envelope had been paid in cash, which is unusual for items originating from businesses.  Additionally, the label on the envelope had been filled out by hand rather than using a computer, which is also unusual for items originating from businesses.  The envelope was sent overnight priority, which, according to the detective who intercepted it, is a practice followed by people shipping drugs in order to minimize the amount of time the drugs are in transit, thereby also minimizing the opportunities for interception.  Finally, the envelope had been sent from a Federal Express terminal in Phoenix, Arizona.  Apparently, Phoenix is often an origin for drug shipments.

{¶ 3} The detective placed the suspicious envelope among ten to twelve similar envelopes and commanded a drug-sniffing dog for which he was the handler to search for drugs.  It alerted on the suspicious envelope.  He then telephoned an Akron Police Detective who was also a drug-sniffing dog handler and asked him to bring his dog to the terminal.  When that dog arrived, it also alerted on the suspicious envelope.  The officers provided Federal Express a receipt for the envelope and took it with them while they obtained a search warrant for its contents.  Inside the envelope, they found a 6.75-by 6.75-by 3.25-inch box that contained a substance that tested positive for methamphetamine.  It was later determined that the box contained 331.78 grams of methamphetamine, which had a street value of between $30,000 and $40,000.

**\*2** {¶ 4} The envelope was addressed to Mr. Sziva at his home in Akron.  The Akron Police Department decided to do a "controlled delivery" of the envelope.  They obtained a search warrant for Mr. Sziva's home, contingent upon Mr. Sziva accepting the envelope.  An Akron narcotics detective, dressed like a Federal Express employee, took the envelope to Mr. Sziva's home.  A number of other officers were stationed nearby in preparation for executing the search warrant.  When nobody answered the door, the detective left a door hanger indicating that a delivery had been attempted.  He returned forty-five minutes to an hour later and, when again nobody answered the door, left the envelope in Mr. Sziva's mailbox.  Mr. Sziva retrieved the envelope a few minutes later, and, a few minutes after that, the officers entered his home to execute the search warrant.

{¶ 5} The officers recovered the Federal Express envelope, still unopened, near the door through which Mr. Sziva had taken it into his house.  They also recovered a gun, a second package containing 4.98 grams of methamphetamine, and some glass pipes of a type used to smoke methamphetamine.

{¶ 6} An Akron narcotics detective read Mr. Sziva his *Miranda* rights, which he waived. Officers than asked him if he knew why the officers were at his house, and he said he believed it had something to do with the Federal Express envelope.  He

claimed, however, that he believed the envelope contained speakers, shipped to him by a man named Ron Phillips. One of the officers who questioned him testified at trial that, as the interview continued, Mr. Sziva acknowledged that he used methamphetamine and that Mr. Phillips was the person from whom he purchased methamphetamine. The officer further testified that Mr. Sziva admitted that he had given Mr. Phillips $1000 several months before for methamphetamine, which Mr. Phillips was going to send him. According to the officer, however, Mr. Sziva also stated that, between the time he gave Mr. Phillips the money and the time Mr. Phillips left town, he obtained some clothes and a tool from Mr. Phillips, thereby reducing the amount of money Mr. Phillips was holding toward methamphetamine for him to $800.

{¶ 7} A second officer who questioned Mr. Sziva testified that he had asked Mr. Sziva what he was getting in return for allowing Mr. Phillips to send drugs to him. He said he told Mr. Sziva that the Federal Express envelope contained over 100 times bulk amount and that that would meet major drug offender status. He testified that Mr. Sziva then acknowledged that he had had "a pretty good idea" what was in the envelope and that he was expecting to get "a little something," but that he did not know it would be "that much." According to the officer, Mr. Sziva said that he was not going to take the "full rap for that." The officer testified that Mr. Sziva then said Mr. Phillips had sent the envelope to him and that he would tell the officers about Mr. Phillips and, if they wanted, call him.

{¶ 8} The officers placed a recording device on Mr. Sziva's cellular telephone and recorded three telephone conversations Mr. Sziva had with Mr. Phillips. In the first conversation, Mr. Phillips asked if everything was good and Mr. Sziva responded that everything was good. Mr. Sziva then asked when Mr. Phillips would be coming back, and he responded that he was 30 to 40 minutes away on the Ohio Turnpike and would come to Mr. Sziva's house after making one stop. In the second conversation, Mr. Phillips indicated that he was close and "made a comment about having a nice, or piece of ice in a glass with a diet Coke." In the third conversation, Mr. Phillips said that he was at a gas station and would be at Mr. Sziva's house in a couple of minutes. When Mr. Phillips arrived at Mr. Sziva's house, he was arrested.

{¶ 9} Mr. Sziva testified at trial and acknowledged that he had been using methamphetamine for close to a year before his arrest. He further acknowledged that he bought his methamphetamine from Mr. Phillips. He claimed that he had told Mr. Phillips that he was looking for some "dome tweeter" speakers for his van and that Mr. Phillips had telephoned him and told him that he had found some. He asked if, since he was out of town, he could send them, to which Mr. Sziva said yes. He denied that he and Mr. Phillips had ever discussed Mr. Phillips sending him drugs.

{¶ 10} Mr. Sziva testified that, when the Federal Express envelope arrived, "it just

3

felt like nothing was in it."He testified that he set the envelope by the door and then the police "come breaking in my house."

{¶ 11} He denied having told the officers that he had provided Mr. Phillips $800 toward the methamphetamine that was shipped to him.  He said that he had taken $1000 over to Mr. Phillips's house a week or two before his arrest for the purpose of buying some clothes, a tool, and some methamphetamine.  He said that the price for the methamphetamine was $100 per gram. He used $200 of the $1000 for the clothes and tool.  He also obtained five grams of methamphetamine, all that Mr. Phillips then had, which was the methamphetamine the officers found when they searched his house.  He said that Mr. Phillips still owed him three grams of methamphetamine, but that it had nothing to do with the envelope he received on the day of his arrest. He denied that he had agreed to allow Mr. Phillips to send methamphetamine to him and denied ever having told the officers that he had.  He acknowledged having had the three telephone conversations with Mr. Phillips after his arrest.

{¶ 12} Mr. Sziva's lawyer attempted to call as a witness a person named Andrew Pratt, and the trial court would not permit him to do so.  Mr. Sziva's lawyer stated that Mr. Pratt was "close to" Ron Phillips and proffered what his testimony would have been:

He would testify that he knew because he was with Mr. Phillips, that Mr. Phillips had secured $10,000 from someone else, not from my client, in order to go to Arizona to purchase drugs and that it was his intention to ship them back to my client.

He would also say that Mr. Phillips has a modus operandi.  One of the things that he does is ship drugs from other states to people in Ohio often to unknown people. He would send them to vacant houses or to other people where he said I am going to send you X, and Y would be in there.  He would say that I am sending you something and it would turn out to be drugs.

The trial court reiterated its ruling, stating that the testimony proffered by Mr. Sziva's lawyer would be "inadmissible hearsay."

{¶ 13} The jury convicted Mr. Sziva of aggravated possession of drugs with a major drug offender specification, complicity to commit aggravated trafficking in drugs, and conspiracy to commit aggravated trafficking in drugs.  The trial court sentenced him to mandatory terms of ten years in prison on the aggravated possession charge, ten years in prison on the complicity charge, and eight years in prison on the conspiracy charge, all to be served concurrently.  The trial court also suspended his driver's license for six months on each charge.

*State v. Sziva*, 2007 WL 2809924, at *1-*4 (Ohio App. Sept. 28, 2007).

Sziva timely appealed his conviction to the state appellate court. In his brief in support of his appeal, Sziva asserted the following two assignment of errors:

> I. ASSIGNMENT OF ERROR #1
> THE COURT ABUSED ITS DISCRETION AND/OR COMMITTED ERROR IN PERMITTING DETECTIVE MCFARLAND TO TESTIFY AS TO HEARSAY STATEMENTS OF A CO-DEFENDANT IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND IN VIOLATION OF THE SUPREME COURT DECISION CRAWFORD V. WASHINGTON AS WELL AS OHIO HEARSAY LAW.
>
> II. ASSIGNMENT OF ERROR #2
> THE COURT ERRED IN NOT PERMITTING THE DEFENDANT TO PRESENT EVIDENCE THAT EXCULPATED HIM FROM THE COMMISSION OF THE CRIME AND THUS DENIED THE DEFENDANT HIS CONSITUTIONAL [sic] RIGHT TO CALL WITNESSES IN HIS OWN DEFENSE AND HIS DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

On September 28, 2007, the state appellate court affirmed the judgment of the trial court.

On November 5, 2007, Sziva filed a timely notice of appeal in the Supreme Court of Ohio. In his memorandum in support of jurisdiction, Sziva presented three propositions of law:

> PROPOSITION OF LAW NO. I
> A DEFENDANT HAS BEEN DENIED HIS SIXTH AMENDMENT RIGHT OF CONFRONTATION AND CROSS-EXAMINATION WHERE A COURT PERMITS AN INVESTIGATING DETECTIVE TO TESTIFY AS TO STATEMENTS OF A CO-DEFENDANT WHO WAS NOT BEING TRIED JOINTLY WITH DEFENDANT.
>
> PROPOSITION OF LAW NO. II
> A DEFENDANT HAS BEEN DENIED HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE WHERE A COURT PROHIBITS THE OFFERING OF EXCULPATORY INFORMATION WHICH WOULD AID THE DEFENDANT IN HIS DEFENSE.
>
> PROPOSITION OF LAW NO. III
> ERROR OF A CONSTITUTIONAL MAGNITUDE, TO BE CONSIDERED HARMLESS MUST BE FOUND TO BE HARMLESS BEYOND A REASONABLE DOUBT AND THE BURDEN RESTS OF THE PROSECUTION TO ESTABLISH HARMLESSNESS BEYOND A REASONABLE DOUBT.

On February 20, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On April 4, 2008, Sziva filed the instant petition, asserting the following three grounds for relief:

    A.    Ground One:  SIXTH AND FOURTEENTH AMENDMENT

    Supporting Facts:  Petitioner was denied his right of confrontation and cross-examination where the trial court permitted an investigating detective to testify to statements of a co-defendant who was not being tried jointly with petitioner.

    B.    Ground Two:  SIXTH AMENDMENT

    Supporting Facts[:]  Petitioner was denied his constitutional right to present a defense where the trial court prohibited petitioner from offering exculpatory information which would aid petitioner in his defense.

    C.    Ground Three:  FOURTEENTH AMENDMENT

    Supporting Facts[:]  Petitioner was denied due process of law where the reviewing court determined that there was a constitutional error.  However, neither the prosecutor nor the Court of Appeals found such error to be harmless beyond a reasonable doubt .  Moreover, the prosecution offered no reason to establish harmless error.

Respondent filed a Return of Writ on June 24, 2008.  Doc. No. 6.  Petitioner filed a Traverse on July 24, 2008.  Doc. No. 7.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him

and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Sziva was convicted in the court of common pleas in Summit County. At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction. His place of incarceration is the Richland Correctional Institution in Mansfield, Ohio. This court has jurisdiction over Sziva's petition.

Respondent argues, however, that Sziva's third ground for relief is not cognizable in federal habeas corpus. This is a challenge to the court's subject matter jurisdiction to consider the claim.

It is difficult to determine the precise nature of Sziva's claim from his petition. The traverse seems to argue, however, that the state appellate court erred in determining that the trial court's exclusion of Pratt's testimony was harmless error. According to Sziva, this claim alleged a violation of Sziva's due process right to present a defense. The state appellate court, however, analyzed his claim merely as alleging an erroneous evidentiary ruling. Thus, Sziva argues that the state appellate court applied the wrong standard in determining whether the trial court's error, if any, was harmless.

Sziva's claim apparently alleges a federal constitutional violation. Respondent does not explain why this claim is not cognizable in a federal habeas corpus proceeding. Thus, respondent's contention that Sziva's third ground for relief is not cognizable by a federal court considering a habeas petition should be overruled.

*B. Evidentiary hearing*

7

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Sziva's claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Sziva has no remaining state remedies for his claims. Because Sziva has no remaining state remedies, his claims are exhausted.

*D.     Procedural default*

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not contend that Sziva has procedurally defaulted any of his claims.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principle at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

10

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* This court will consider Sziva's grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

*A.  Ground one: Whether allowing the detective's testimony regarding a co-defendant's statement's violated Sziva's right of confrontation*

Sziva argues that the admission of an investigating detective's testimony at trial regarding statements that Phillips made on the telephone to Sziva deprived Sziva of his right to confront and cross-examine the witnesses against him.[1] Respondent counters that the state appellate court reviewing the corresponding claim during Sziva's direct appeal was correct in finding this claim to be without merit. The state appellate court made the following relevant findings of fact and conclusions of law regarding this claim:

{¶ 15} In *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Mr. Phillips was unavailable to testify at trial because he had absconded. Further, Mr. Sziva did not have a prior opportunity to cross-examine him. If his statements were "testimonial," therefore, they could not be received in evidence without offending the Confrontation Clause.

{¶ 16} As has been noted by the Ohio Supreme Court, the United States Supreme Court, in *Crawford,* declined to define "testimonial statements" for Confrontation Clause purposes. *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, ¶ 19. It did, however, provide three examples of "formulations" of "testimonial statements":

The first deems testimonial all " '*ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony

---

[1] These statements are described in the excerpt from the state appellate court opinion at *supra*, p.3.

11

that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " . . . The second includes all " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " . . . And the third includes " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' "

*Id.* (quoting *Crawford,* 541 U.S. at 51-52). Of the three formulations, only the third is potentially relevant to Mr. Phillips's statements in his telephone conversations with Mr. Sziva.

{¶ 17} As also has been noted by the Ohio Supreme Court, the United States Supreme Court provided further guidance in *Davis v. Washington,* ---U.S. ----, 126 S.Ct. 2266 (2006), about how to determine whether statements potentially within the third formulation are "testimonial":

In its analysis, the court explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the *primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency.". . . Conversely, the court stated, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the *primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Stahl,* 111 Ohio St.3d at ¶ 23 (quoting *Davis,* 126 S.Ct. at 2273-2274) (emphasis added by the court in *Stahl* ). In determining the "primary purpose" of interrogation for Confrontation Clause purposes, it is necessary to focus on the expectation of the declarant:

In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.

*Id.* at ¶ 36.

{¶ 18} In this case, Mr. Sziva was arguably acting as an agent of police when he engaged Mr. Phillips in the telephone conversations. Mr. Phillips, however, did not know that. Focusing on Mr. Phillips's reasonable expectation leads to the conclusion that his "primary purpose" would not have related to later criminal prosecution. In fact, providing information to Mr. Sziva for use in a later criminal prosecution would have been no part of Mr. Phillips's purpose. His purposes were to ask Mr. Sziva whether everything was good and to update him on the progress of his trip back from Arizona. His statements, therefore, were not testimonial for

> purposes of the Confrontation Clause. To the extent Mr. Sziva's first assignment of error is based on the Confrontation Clause, it must be overruled.

*Sziva*, 2007 WL 2809924 at *4-*6.

Sziva does not respond by asserting that Phillips' statements were, indeed, testimonial or by offering any alternative analysis employing an appropriate legal framework. Rather, Sziva analogizes Phillips' statements to the statements of a confidential government informant and argues that if a confidential informants' accusations are inadmissible, then Phillips' statements are inadmissible also. Sziva does not explain why, for the purposes of conducting an appropriate legal analysis, the obvious differences between Phillips and a confidential government informant are more important than whatever similarities they may share.

Sziva has not shown that the state appellate court reached a conclusion opposite to that reached by United States Supreme Court holdings on a question of law, arrived at an opposite result from the Supreme Court on materially indistinguishable facts, or shown by clear and convincing evidence that the court's factual determinations were incorrect. Having failed to satisfy any of the requirements for habeas relief, Sziva's first ground for relief should be dismissed as without merit.

*B.    Ground two: Whether Sziva was deprived of the right to present a defense when the court prohibited the testimony of Pratt*

Sziva argues in ground two that he was deprived of the right to present a defense when the court refused to allow the testimony of Pratt regarding Phillips' customary behavior and his purchase of drugs. Respondent contends that this claim, too, is without merit and that the state appellate court's analysis of the corresponding state claim was correct. The state appellate court made the following relevant findings of fact and

13

conclusions of law regarding this claim:

> Mr. Sziva's lawyer proffered that Mr. Pratt would have testified regarding Mr. Phillips's claimed modus operandi and the claimed source of the money Mr. Phillips used to purchase the methamphetamine that he sent to Mr. Sziva. The trial court refused to allow the testimony, ruling that it would be inadmissible hearsay.
>
> {¶ 24} It is unclear whether Mr. Pratt's testimony regarding Mr. Phillips's claimed modus operandi would have been hearsay. The real problem with the proffer regarding that testimony was that it did not include a foundation for Mr. Pratt's claimed knowledge. Rule 602 of the Ohio Rules of Evidence provides that evidence establishing a witness's personal knowledge of the matters about which he will testify must be introduced:
>
> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.
>
> The part of the proffer dealing with Mr. Phillips's claimed modus operandi did not include how Mr. Pratt supposedly knew about that modus operandi:
>
> He would also say that Mr. Phillips has a modus operandi. One of the things that he does is ship drugs from other states to people in Ohio often to unknown people. He would send them to vacant houses or to other people where he said I am going to send you X, and Y would be there. He would say that I am sending you something and it would turn out to be drugs.
>
> If Mr. Pratt's claimed knowledge of Mr. Phillips's modus operandi was based on things told him by other people, he did not have personal knowledge of it. If he participated with Mr. Phillips in sending drugs to unsuspecting people or if Mr. Phillips had sent him drugs that he was not expecting, he would have had personal knowledge. Because the proffer did not include a foundation for his knowledge, the trial court correctly excluded his testimony. "A reviewing court is not authorized to reverse a correct judgment merely because it was reached for a wrong reason." *State v. Lozier,* 101 Ohio St.3d 161, 166-167 (2004) (citing *State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn.,* 81 Ohio St.3d 283, 290 (1998)). To the extent Mr. Sziva's second assignment of error is based on the trial court's exclusion of Mr. Pratt's proffered modus-operandi testimony, therefore, it must be overruled.
>
> {¶ 25} Part of the remainder of the proffer did include a proper foundation. Mr. Sziva's lawyer said that Mr. Pratt was present when Mr. Phillips obtained $10,000. He, therefore, would have had personal knowledge of Mr. Phillips obtaining the money:

> He would testify that he knew because he was with Mr. Phillips, that Mr. Phillips had secured $10,000 from someone else, not from my client, in order to go to Arizona to purchase drugs and that it was his intention to ship them back to my client.
>
> To the extent this part of the proffer related to the assertion that the money would be used for drugs purchased in Arizona and shipped to Mr. Sziva, however, it did not include a proper foundation, and that part was properly excluded. Assuming that the trial court erred in excluding Mr. Pratt's testimony that he was present when Mr. Phillips obtained $10,000, Mr. Sziva was not prejudiced by the exclusion of that testimony. Even if that $10,000 could be assumed to have been an investment in the methamphetamine that Mr. Phillips sent Mr. Sziva, that methamphetamine had a street value of between $30,000 and $40,000. The fact that a different person had invested $10,000 toward its purchase did not tend to prove that Mr. Sziva had not also invested money toward its purchase. If the trial court erred by excluding Mr. Pratt's testimony that he saw Mr. Phillips obtain $10,000, that error was harmless within the meaning of Rule 52(A) of the Ohio Rules of Criminal Procedure. Mr. Sziva's second assignment of error must be overruled.

*Sziva*, 2007 WL 2809924 at *6-*7.

Sziva cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), for the proposition that Sziva had a right to a defense and that Pratt's testimony under the circumstances at his trial was admissible. After Chambers was arrested for murder, a third person, McDonald, told three different friends that he had committed the murder in question and made, and later repudiated, a written confession. Chambers called McDonald as a witness but was not allowed to cross-examine him for purposes of impeachment under Mississippi law. Moreover, the court precluded Chambers from calling the three friends to whom McDonald had confessed, finding that such testimony would have been inadmissible hearsay. The United States Supreme Court found that these rulings unconstitutionally precluded Chambers from his due process right to present a defense.

Sziva also cites *Chia v. Cambra*, 360 F.3d 997 (9th Cir. 2004), as a similar case. Chia was convicted of first-degree murder, attempted murder, second-degree robbery, and conspiracy to commit robbery. State appellate courts affirmed his convictions, and Chia

15

petitioned for a federal writ of habeas corpus. The Ninth Circuit Court of Appeals found that the exclusion of the testimony of Chia's friend, made after surgery following a shootout with police and implicating himself, that Chia had not been present at the shooting and had tried to talk him out of the robbery violated Chia's due process right to present a defense.

Sziva fails to explain how either case is similar to his own. In *Chambers* and *Chia*, the statements that should have been admitted were inherently based on first-hand knowledge and had particular indicia of reliability, in part because they inculpated the declarant. As the state appellant court stated, the basis in first-hand knowledge of most of Pratt's statements was problematic. Moreover, Pratt's statements were not self-inculpatory. Thus, they did not enjoy the indicia of reliability marking the statements of the declarants in *Chambers* and *Chia*. Finally, Sziva does not address the problems that the state court found with the relevance of Pratt's statements to the accusations against Sziva. Consequently, Sziva's argument that *Chambers* and *Chia* mandate admission of Pratt's statements because they violated his due process right to defend himself is not well-taken.[2]

Sziva does not demonstrate that the trial court or the state appellate court arrived at an opposite result from the United States Supreme Court on materially indistinguishable facts. Consequently, Sziva's second ground for relief should be dismissed as without merit.

*C.     Ground three:     Whether the state appellate court's determination that any constitutional error in Sziva's trial was harmless deprived Sziva of due process*

---

[2] Moreover, even if the facts in *Chia* had been parallel to those in Sziva's case, Sziva's burden is to demonstrate that the court in his case arrived at an opposite result from a holding of the *United States Supreme Court* on materially indistinguishable facts. The holding of the Ninth Circuit Court of Appeals is not relevant, even as persuasive authority.

16

Sziva argues that the state appellate court's determination that the exclusion of Pratt's testimony was subject to a harmless error standard violated Sziva's right to due process. This is so, Sziva contends, because the court analyzed Sziva's claim as a violation of a state evidentiary rule rather than as a constitutional violation. Respondent contends that this claim is not cognizable in a federal habeas proceeding and also argues that the state appellate court's determination that any error was harmless was correct.

As has already been shown, respondent's contention that Sziva's third ground for relief is not cognizable in a federal habeas proceeding is without merit. It has also been shown above that the state appellate court's decision affirming the exclusion of Pratt's testimony was not constitutional error. Thus, the question of whether the state appellate court erred in finding that any such error was harmless is moot.

Moreover, even if his claim were not moot, this would not avail Sziva. As will be seen, Sziva is correct that the appellate court should have used the standard described in *Chapman v. California*, 386 U.S. 18 (1967), in determining whether any alleged trial error of constitutional magnitude was harmless. The standard described in *Chapman* is whether the error was harmless beyond a reasonable doubt. Instead, the state appellate court relied on the standard in Rule 52(A) of the Ohio Rules of Criminal Procedure in finding that even if the trial court erred by excluding Pratt's testimony that he saw Phillips obtain $10,000 from someone other than Sziva, that error was harmless.

But the appropriate questions are not whether the *state appellate court* erred and whether its error was harmless. The appropriate questions are whether the *trial court* erred and whether its error was harmless. The proper standard for a federal court to apply when determining whether a trial error of constitutional magnitude was harmless is the standard

17

described in *Brecht v. Abrahamson,* 507 U.S. 619 (1993). According to *Brecht*, a court considering a collateral review of a conviction should weigh constitutional "trial error"[3] by (1) evaluating the error in the context of the entire record; (2) asking whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless. *id.* at 638. "[I]n § 2254 proceedings a [federal] court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705." *Fry v. Pliler*, ___ U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007).

Sziva alleges that the trial court erred in refusing to admit Pratt's testimony that he saw Phillips obtain from someone other than Sziva $10,000 to buy drugs. Looking at this alleged error in the context of the evidence against Sziva, it is impossible to conclude that

---

[3] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *Id.,* at 307-308 [citing *Arizona v. Fulminante,* 499 U.S. 279, 307 (1991)]. At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process. See *id.,* at 309-310. Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

it had a substantial and injurious impact on the jury's verdict. Whether Phillips ever obtained drugs using someone else's money is of no relevance to whether he used Sziva's money to buy drugs. Because Pratt's testimony was irrelevant, it could not have had a substantial and injurious impact on the jury's verdict that Sziva was guilty of possession of drugs, drug trafficking, and conspiracy to traffic in drugs.

Sziva's third ground for relief is moot and without merit. Thus, it should be dismissed.

### III. Conclusion

For the foregoing reasons, the magistrate judge recommends that Sziva's petition be dismissed as without merit.

/s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

Date: October 1, 2008

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).** ***See also Thomas v. Arn*, 474 U.S. 140 (1985),** ***reh'g denied*, 474 U.S. 1111.**